UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD ALLEN,

                    Petitioner,

                                        Civil No. 08-12723
v.                                    Honorable David M. Lawson

DEBRA SCUTT,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING RESPONDENT'S MOTION TO DISMISS AS MOOT

      The petitioner, Ronald Allen, who is presently in the custody of the Michigan department of corrections, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, the petitioner challenges his Jackson County, Michigan circuit court conviction for third-degree fleeing and eluding, Mich. Comp. Laws § 257.602a(3), for which he was sentenced to four to 20 years imprisonment as a fourth habitual offender, Mich. Comp. Laws § 769.12. The petitioner argues that his conviction violated his rights under the Due Process Clause of the Fourteenth Amendment because the evidence was insufficient to prove all the elements of the crime. The respondent has filed a motion to dismiss the petition on exhaustion grounds and an answer to the petition contending that it should be denied for lack of merit. The Court finds that the petitioner's claims lack merit and do not warrant habeas relief. The Court, therefore, will deny the petition and will deny the respondent's motion to dismiss as moot.

I.

The petitioner's conviction arises from his actions in failing to promptly stop his vehicle

when signaled for a traffic stop by a Jackson, Michigan police officer on March 3, 2006.  What

followed was a two-minute, fifteen mile-per-hour pursuit through a Jackson neighborhood.  Officer

Speidel testified that he decided to stop the petitioner after he failed to activate his turn signal when

making a turn.  Speidel testified:

> A:    As the vehicle pulled across Francis Street is where I decided to initiate the
> traffic stop, being a safe area to make the traffic stop outside of the
> intersection, just east of the intersection, I turned on my overhead lights in
> an attempt to effect a traffic stop to get the vehicle to stop.
>
> Q:    Did the car stop?
>
> A:    No, it did not.
>
> Q:    Did you use any other of your emergency gear?
>
> A:    Yes, I did.  Shortly after turning on my emergency overhead lights, which
> would be the red and blue lights, I turned on my driver's side passenger light,
> or I'm sorry, my driver's side spotlight, and focused it on the driver of the
> vehicle that was in front of me.
>
> . . .
>
> Q:    Did the driver react to you using your lights and your spotlight?
>
> A:    He did.  He slowed down to approximately 15 miles an hour.  I believe he
> was traveling much faster than that, but he did slow down, slightly.
>
> Q:    This is a residential area?
>
> A:    Yes, it is.
>
> Q:    Do you know what the speed limit is on Robinson there?
>
> A:    Yes, I do.
>
> Q:    What is it?
>
> A:    It's 25 miles an hour.
>
> . . .
>
> Q:    What happened next?
>
> A:    The vehicle, white, 4-door vehicle, continued to traveled east on Robinson
> at approximately that 10 to 15 miles an hour east on Robinson.  This time, I
> had my emergency equipment on.  What I had on was the overhead lights,
> and the spotlight still trying to get the vehicle to stop.  At this point in time,
> I'm now telling calling central dispatch what's occurring, the vehicle's not
> stopping.  The vehicle slows down at the intersection of South Milwaukee
> and east Robinson.  There's a stop sign for eastbound traffic on east
> Robinson at that intersection.  The vehicle doesn't come to a complete stop.
> It makes a left hand turn onto South Milwaukee street.  At this time, I'm

-2-

slowing starting to realize that the vehicle is not going to stop for me.  I do turn on my full emergency equipment, which would – the next step would be utilizing my siren – the siren on the patrol vehicle.  It's a loud siren.  So now I have on my overhead lights, red and blue flashing lights, my headlight flashers are flashing, I have my spotlight on the driver of the vehicle and I also have my siren.  So all my full equipment emergency is activated.  So we're traveling north on south Milwaukee.

. . .

Q:    Did he stop when you were on Milwaukee?

A:    No, he did not.

Q:    What happened next?

A:    The vehicle continued traveling north on Milwaukee.  Once he got to the next cross street, which would be Wall, the vehicle made a right hand turn onto Wall Street.  At this time, Sergeant Carter joined me in what is now a vehicle pursuit.  She was second vehicle involved.  She indicated that she would be taking over the radio contact with central dispatch so I wouldn't have to call out the directions and what not.  The vehicle continued traveling eastbound on Wall Street, which is a fairly long bloc, until it reached the intersection of Merrimen and Wall Street where it started to slow down to probably about 2 miles an hour, 2 to 3 miles an hour.

Q:    For the duration that you were on Wall Street, did you still have your overhead lights on?

A:    Yes, my full emergency equipment was still on.

Q:    Did you still have your spotlight on?

A:    Yes.

Q:    Did you still have your siren on?

A:    Yes.

. . .

Q:    What happened next?

A:    As the vehicle approached, it is now approaching the intersection of Merriman and Wall Street.  The vehicle is slowing down considerably.  At this point in time, makes a left hand turn onto Merriman, it's slowing down now to probably about 1, 2 miles per hour effectively creeping along.  The vehicle kind of comes to a stop and then lurches forward and slows down and then comes basically to a stop, to a complete stop.

Q:    Are your emergency lights still on?

A:    Yes, they are.

Q:    Are you using your spotlight?

A:    Yes.

Q:    Is your siren still on?

A:    Once the vehicle had stopped, I believe I turned my siren off.  But up until that point, it was still on, yes.

Q:    And did this car stop as soon as it made a turn onto Merriman, or did it continue to roll?

A:    It continued to roll.

      . . .

A:    This is when I basically exited my patrol vehicle, still staying back by my patrol vehicle and began giving the driver, or other occupants of the vehicle, verbal directions.

      . . .

Q:    Now, you stated that this car does eventually end up stopping, is that correct?

A:    Yes.

Q:    Can you estimate, from the time that you initiated your traffic – your overhead lights that this car came to stop, how much time had passed?

A:    Approximately two minutes.

      . . .

Q:    Now what was the – could you see into the car, when the car stopped?

A:    I could see into the car, yes.

Q:    What was the driver doing?

A:    The driver was moving around.  It looked like he was leaning over to his right, towards like the passenger seat of the vehicle.  He still remained seated in the driver's seat of his vehicle.  Both myself and Sergeant Hitt started giving him verbal directions.

      . . .

Q:    Where you were?  You said you got out of your patrol vehicle?

A:    Yes, I did.

Q:    Where did you – where were you when you first started giving verbal commands?

A:    I first stood right in the door jamb of my driver's side door.  This is when I started instructing the driver to turn the vehicle off.  I also started instructing him to raise his hands.  He did so.  I started giving the driver instructions to unlock, or I'm sorry, to open the door from the outside.  These are all very loud verbal repetitive commands.  I'm not just saying it once.  I'm repeating myself so the driver of the vehicle understands what I'm saying to him.  The driver of the vehicle reaches out and tries to open the door from the outside.  However, the door does not open.  We still continue to give him – I continue to give him verbal commands to open the door.  He's still not doing that.  He's putting his hands down.  I tell him to put his hands up.  He puts his hands up.  At this point in time, I begin to start realizing that he is not going to avail our commands when we are telling him to get out of the vehicle, and we were going to actually have to go up there and extract him from the vehicle.

      . . .

A:    Sergeant Hitt actually walked back around the back of the white vehicle, basically walks in between my patrol vehicle and the white vehicle, the white Dodge.  And as we were – and simultaneously, I make the decision to go up there with him.  He's coming around the back of the vehicle walking up the driver's side and I'm walking up, basically, just to his left, and I hear him say

-4-

we're going to have to break the window.  We're still yelling, I'm still yelling at the driver, giving him verbal commands, open up the car door, open up the car door.  I hear the driver yelling to me, I'm not getting out of the car until I talk to a supervisor.  At that point in time, Sergeant Hitt strikes the driver's side window twice with his baton, startles the driver, the driver kind of leans to the right and then leans back and – at this point in time, the window is completely rolled up when Sergeant Hitt strikes the window of the vehicle.  The driver of the vehicle then rolls down the window, approximately 3 or 4 inches, basically just enough for me to stick my arm in. I reach in and I just hit the unlock button, the car door is opened.  I start giving him more commands, get out of the car, get out of the car.  Sergeant Hitt and I both attempt to remove him from the car cause he's just sitting there.  I actually reach over and try to reach the ignition key because I don't want the driver to start the car up and take us with him as he's pulling off. I wasn't able to do that.  And at the same time, we weren't able to pull him out of the car – the driver out of the car because he still has his seat belt buckled.  So I started giving him verbal commands, undo your seatbelt, undo your seatbelt.  The driver of the vehicle still continued to just sit there. Sergeant Hitt actually has to reach in across the driver and undo the driver's seat belt for him and at this point in time, we're able to remove the driver from the vehicle, once we get his seat belt off.

Trial Tr., 06/07/06, at 110-21.  Based on this information, the jury convicted the defendant of third-degree fleeing and eluding.  Although the statutory maximum penalty for third-degree fleeing and eluding is five years incarceration, Mich. Comp. Laws § 257.602a(3), the petitioner was sentenced as a habitual offender to four to twenty years imprisonment.

Following his conviction and sentencing, the petitioner filed an appeal as of right with the Michigan Court of Appeals, raising the following claims:

I.     WHERE THE DEFENDANT DID NOT INCREASE THE SPEED OF HIS VEHICLE, BUT CAME TO A SLOW STOP, THERE WAS INSUFFICIENT EVIDENCE AT TRIAL TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT TRIED TO FLEE OR AVOID BEING CAUGHT BY THE POLICE CONTRARY TO MCL 257.602(A)(3)(B).

II.    DEFENDANT WAS IMPROPERLY CHARGED AND CONVICTED OF THE ENHANCED FELONY OF FLEEING AND ELUDING IN THE THIRD DEGREE WHERE DEFENDANT DID NOT INCREASE THE SPEED OF HIS VEHICLE CONTRARY TO MCL 257.602(a)(3), WHICH IS INTENDED TO MORE SEVERELY

-5-

PUNISH PERSONS ATTEMPTING TO FLEE OR ELUDE POLICE OFFICERS IN RESIDENTIAL AREAS BY INCREASING THE SPEED OF THEIR VEHICLES.

The Michigan Court of Appeals affirmed the petitioner's conviction and sentence. *People v. Allen*, No. 272183, 2008 WL 241107 (Mich. Ct. App. Jan. 29, 2008) (unpublished). The Michigan Supreme Court denied leave to appeal in a standard order. *See People v. Allen*, 481 Mich. 879, 748 N.W.2d 845 (2008) (table). The petitioner timely filed his federal habeas application raising the following two issues:

I.    THE EVIDENCE WAS INSUFFICIENT TO CONVICT ON THIRD-DEGREE, FLEEING & ELUDING.

II.    DEFENDANT WAS IMPROPERLY CHARGED AND CONVICTED OF THE ENHANCED FELONY OF FLEEING & ELUDING IN THE THIRD DEGREE.

The respondent opposes the petition, contending that the petition should be dismissed on exhaustion grounds and the petitioner's habeas claims lack merit.

II.

As an initial matter, the respondent contends that the petition should be dismissed on exhaustion grounds because the petitioner failed to properly federalize his second habeas claim on direct appeal before the Michigan Court of Appeals. A state prisoner filing a petition for writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The prisoner must fairly present the substance of each federal constitutional claim in state court. *See* 28 U.S.C. §§ 2254(b)(1)(A) and 2254(c). "'A petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions

-6-

employing constitutional analysis in similar fact patterns.'" *Carter v. Bell*, 218 F.3d 581, 607 (6th Cir. 2000) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

Although the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). The Court may deny a claim on the merits without considering exhaustion when it is more efficient to do so. 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies); *see also Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987). The Court finds that the interests of justice are better served by adjudicating the petitioner's claims despite any possible lack of exhaustion.

III.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-7-

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.  The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable.

*Id.* at 409-11; *see also Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515

F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v.

Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en

banc).

The petitioner contends that the State failed to present sufficient evidence to convict him of

the statutory crime of third-degree fleeing and eluding.  In support of that argument, the petitioner

states that:(1) because the petitioner did not take affirmative action, such as increasing his speed,

to evade the police, there is no proof that the crime occurred, (2) the police officers gave conflicting

evidence at trial, and (3) the statutory enhancement for third-degree fleeing and eluding is meant to

protect people in residential areas from high-speed chases and does not apply to slow-speed chases.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re

Winship*, 397 U.S. 358, 364 (1970).  The standard of review for a sufficiency of the evidence

challenge must focus on whether "after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond

-9-

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the

habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive

elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th

Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).  "A reviewing court does not reweigh the

evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the

trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v.

Lonberger*, 459 U.S. 422, 434 (1983)).  Therefore, "[t]he mere existence of sufficient evidence to

convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

     The statute under which the petitioner was convicted states:

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren
> a visual or audible signal by a police or conservation officer, acting in the lawful
> performance of his or her duty, directing the driver to bring his or her motor vehicle
> to a stop shall not willfully fail to obey that direction by increasing the speed of the
> motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting
> to flee or elude the officer.

Mich. Comp. Laws § 257.602a(1).  In an identically-worded statute, Mich. Comp. Laws § 750.479a,

the phrase "otherwise attempting to flee or elude the officer" has been interpreted to apply only to

"acts or conduct of the same kind, class, or character as speeding or extinguishing lights." *People

v. Grayer*, 235 Mich. App. 737, 740 n. 2, 599 N.W.2d 527, 529 n. 2 (1999).

     In *Grayer*, the state appellate court held that the prosecution must prove six elements to

establish third-degree fleeing and eluding:

> (1) the law enforcement officer must have been in uniform and performing his lawful
> duties and his vehicle must have been adequately identified as a law enforcement
> vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer,
> with his hand, voice, siren, or emergency lights must have ordered the defendant to
> stop, (4) the defendant must have been aware that he had been ordered to stop, (5)
> the defendant must have refused to obey the order by trying to flee from the officer
> or avoid being caught, which conduct could be evidenced by speeding up his vehicle

-10-

> or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law as listed in M.C.L. § 750.479a(3)(c); MSA 28.747(1)(3)(c).

*Id.* at 741, 599 N.W.2d at 530. The terms "flee" and "elude" connote an intent "to take affirmative action, not simply fail to submit." *Ibid.* There is no requirement that the defendant's speed exceed a certain level or that any speeding occur over a long distance in order for the elements of the statute to be met, but the prosecution must demonstrate the defendant's intent to flee or avoid capture. *Id.* at 741-42, 599 N.W.2d at 530. The *Grayer* court found the following to be sufficient evidence to establish probable cause that the crime of fleeing and eluding was committed:

> Defendant accelerated his vehicle after the officer activated his flashing lights, which, under the statute, appears to be sufficient evidence from which to infer intent. In addition to that testimony, however, there was also other circumstantial evidence to conclude that defendant intended to elude the officer. The deputy followed defendant for approximately one mile with his emergency lights on and with his siren activated for a portion of that time, and when defendant finally emerged from the vehicle, he ran away from the deputy and then attempted to misdirect him. This testimony reasonably leads to the inference that defendant's intent in not stopping when ordered to do so was to avoid capture, in other words, to elude the officer.

*Id.* at 743-44, 599 N.W.2d at 531. After remand, the defendant was tried, convicted, and appealed, raising sufficiency of the evidence grounds. The court of appeals rejected his sufficiency of evidence argument:

> [T]here was testimony that defendant exceeded the speed limit for a short time; therefore, despite the fact that the speeding was not extremely excessive or long lasting, there was sufficient evidence to support the conviction. Additionally, there was sufficient evidence that defendant was trying to flee and avoid capture in his vehicle as shown by the speeding, the sharp turn made down a street close to defendant's home, and defendant's actions after leaving the vehicle. Although the foot chase and defendant's actions after the vehicle pursuit ended could not form the basis for the fleeing and eluding conviction, the actions constituted circumstantial evidence of defendant's intent to flee and elude the police while he was operating his vehicle.

-11-

*People v. Grayer*, 252 Mich. App. 349, 356, 651 N.W.2d 818, 823 (2002).

In this case, the Michigan Court of Appeals rejected the petitioner's sufficiency of evidence argument on direct appeal, reasoning:

> Defendant's conduct of continued driving for two minutes after being signaled to stop and failing to stop at a stop sign during that time is sufficient evidence for a rational trier of fact to find that defendant took affirmative actions to avoid capture at that time.

*Allen*, 2008 WL 241107 at *1-2. Although the State's case against the petitioner is not a strong one, the Court cannot say that the state appellate court unreasonably applied *Jackson v. Virginia*. Jackson Police Officer Ryan Speidel testified that he was in uniform and in a marked patrol car when he observed the petitioner make a turn without using a turn signal. Officer Speidel activated his overhead red and blue lights to effectuate a traffic stop of the petitioner's vehicle. Shortly thereafter, Officer Speidel turned on his driver-side spot light and focused it on the driver. The evidence that the petitioner took an affirmative step to elude police of the "same kind, class, or character as speeding or extinguishing lights" is quite weak under the standards announced in the published *Grayer* cases. The sum of the evidence establishes that he did not immediately pull over when the police officer activated his lights; he completed three turns; and he failed to completely stop at a stop sign. The state court concluded that this evidence established a violation of the statute, which amounts to an interpretation of state law that is not cognizable on habeas review. *Sanford v. Yukins*, 288 F.3d 855, 860-61 (6th Cir. 2002). Under the interpretation given to the statute, the state appellate court's conclusion that there was sufficient evidence for conviction is not an unreasonable application of federal law.

The petitioner also challenges the sufficiency of the evidence on the grounds that the police officers' testimony was inconsistent or conflicted with other evidence. Nevertheless, it is the job

-12-

of the jury, and not this Court, to resolve any evidentiary conflicts. *See Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). Habeas relief may not be granted on that basis.

The petitioner also asserts that his conviction cannot stand because the third-degree fleeing and eluding "enhancement" is meant to protect people in residential areas from high-speed chases and does not apply to slow-speed situations. The Michigan Court of Appeals denied relief on this issue, stating:

> Defendant's second issue argues that the statutory enhancement to third-degree fleeing and eluding was not meant to apply in situations of slow-speed chases. The specific statutory provision in question states that a violator of the statute is guilty of third-degree fleeing and eluding if "[a] portion of the violation occurred in an area where the speed limit is 35 miles an hour or less whether that speed limit is posted or imposed as a matter of law." MCL 257.602a(3)(b).
>
> Defendant did not raise this issue before the trial court so it is not preserved. Thus, the issue is reviewed to determine whether plain error affected defendant's substantial rights. *People v. Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).
>
> "The goal of statutory interpretation is to ascertain the intent of the Legislature." *Grayer, supra* at 739. The first step to determine the Legislature's intent is to examine the specific language of the statute. *Id.* If the plain and ordinary meaning of the language is clear, then judicial construction is normally not permitted or necessary. *Id.*
>
> The language of the statutory provision in question is unambiguous: The crime is enhanced to third-degree if "[a] portion of the violation occurred in an area where the speed limit is 35 miles an hour or less." MCL 257.602a(3)(b). Defendant asserts that the Legislature only intended for the enhancement to apply in cases where a high-speed chase endangered neighborhood residents. But defendant has not noted any ambiguity in the plain language of the statute. The statutory language is clear and unambiguous. Therefore, judicial construction is not necessary or permitted. Defendant has not shown plain error affecting his substantial rights.

-13-

*Allen*, 2008 WL 241107 at *2-3.

This decision is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof.  To the extent that the petitioner challenges the Michigan Court of Appeals' construction or application of state law, he is not entitled to relief.  "A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.  A federal court may not issue the writ on the basis of a perceived error of state law." *Sanford*, 288 F.3d at 860.  State courts are the final arbiters of state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Moreover, the trial testimony established that the petitioner committed the offense in a residential area where the speed limit was less than 35 miles per hour.  As a technical matter, therefore, the enhancing element was established under the state statute.  The Michigan Court of Appeals' decision was a reasonable application of state law, so habeas relief is not warranted on his claims.

IV.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt #1] is **DENIED**.

It is further **ORDERED** that the respondent's motions to dismiss [dkt. #8 & 9] are **DENIED** as moot.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  April 13, 2009

-14-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 13, 2009.

s/Lisa M. Ware
LISA M. WARE